**FILED**
LAL
SEP - 6 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT DEMAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **05C  5093** |
| v. | ) | |
| | ) | |
| THE CHICAGO WHITE SOX, LTD., | ) | **JUDGE DER-YEGHIAYAN** |
| CHISOX CORPORATION, a corporation, | ) | |
| AT YOUR SERVICE, INC., a corporation, | ) | |
| AT YOUR SERVICE, L.L.C., SDI | ) | **MAGISTRATE JUDGE LEVIN** |
| SECURITY, INC., a corporation, | ) | |
| SUPERIOR AIR-GROUND | ) | |
| AMBULANCE SERVICE, INC., a | ) | |
| corporation, and OTHER UNKNOWN | ) | |
| DEFENDANTS, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, ROBERT DEMAR, by and through his attorneys, and Complains of the Defendants, CHICAGO WHITE SOX, LTD., CHISOX CORPORATION, a corporation, AT YOUR SERVICE, INC., a corporation, AT YOUR SERVICE, L.L.C., SDI SECURITY, INC., a corporation, SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC., a corporation, and OTHER UNKNOWN DEFENDANTS as follows:

## INTRODUCTION

1.  Plaintiff brings this action against Defendants pursuant to Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181, *et. seq.* ("ADA"), for Defendants' violations of the ADA, and Illinois state law for Defendants' assault, battery, and false imprisonment of Plaintiff.

Dockets.Justia.com

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

3.    Venue is proper in this judicial district under 28 U.S.C. § 1391.

## PARTIES

4.    Plaintiff ROBERT DEMAR (hereinafter sometimes referred to as "DEMAR") is a citizen of the United States and a resident of the City of Chicago, State of Illinois. Plaintiff is an individual with a physical impairment that substantially interferes with one or more of his major life activities, including walking. At all relevant times, Plaintiff was protected under 42 U.S.C. § 12181, *et. seq.*

5.    On and before September 7, 2003, THE CHICAGO WHITE SOX, LTD. was a general partner with CHISOX CORPORATION (hereinafter collectively referred to as "SOX"). On and before September 7, 2003, the SOX leased, operated, managed, maintained and controlled the premises known as US Cellular Field, which is located at 333 West 35th Street, City of Chicago, County of Cook, State of Illinois (hereinafter also referred to as the "ballpark"). During major league baseball games and other public events, US Cellular Field is a place of public accommodation under the ADA and Defendants are thus prohibited from discriminating on the basis of disability. See 42 U.S.C. 12182(a); 42 U.S.C. 12181(7); 28 C.F.R. Pt. 36, App. B at 585; Title III Technical Assistance Manual III-1.2000(D)(1994 Supp.)(Add. 5); and 42 U.S.C. 12182(b)(1)(E).

6.    On and before September 7, 2003, AT YOUR SERVICE, INC. and AT YOUR SERVICE, L.L.C. (hereinafter collectively referred to as "AT YOUR SERVICE"), entered into an

2

agreement with Defendants, the SOX, whereby it became an employee, servant and/or agent of the SOX, to provide planning and staffing for baseball games at US Cellular Field, including but not limited to security and crowd control services.

7.  On and before September 7, 2003, SDI SECURITY, INC. (hereinafter referred to as "SDI") entered into an agreement with Defendants, the SOX, whereby it became an employee, servant and/or agent of the SOX, to provide security services at US Cellular Field.

8.  On and before September 7, 2003, SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC. (hereinafter referred to as "SUPERIOR") was a provider of emergency medical services and transportation, with an ambulance on-site at US Cellular Field.

9.  On and before September 7, 2003, OTHER UNKNOWN DEFENDANTS (hereinafter referred to as "UNKNOWN DEFENDANTS", "security personnel", or "ambulance personnel") were acting in the scope of their employment, as security personnel and/or ambulance personnel, with actual and apparent authority of the named Defendants, whose names and identities are presently unknown to Plaintiff.

## STATEMENT OF FACTS

10. On and before September 7, 2003, Defendant, the SOX, leased, operated, managed, maintained and controlled the premises known as US Cellular Field, which is located at 333 West 35th Street, in the City of Chicago, County of Cook, State of Illinois.

11. On and before September 7, 2003, the SOX controlled, permitted, planned and coordinated a baseball game at US Cellular Field.

12.   On September 7, 2003, Defendant, AT YOUR SERVICE, controlled, trained, planned, monitored and coordinated security and crowd control services and personnel for the baseball game.

13.   On September 7, 2003, Defendant, SDI, controlled, trained, planned, monitored and coordinated security and crowd control services and personnel for the baseball game.

14.   On September 7, 2003, Defendant, SUPERIOR, placed an ambulance at US Cellular Field and offered its medical and emergency transport services to the general public.

15.   On September 7, 2003, Plaintiff was a patron at the aforementioned baseball game at US Cellular Field.

16.   At all times relevant, Plaintiff was a business invitee of the SOX.

17.   At all times relevant, and in particular on September 7, 2003, Plaintiff was under a disability as defined by the ADA, in that he suffered, and continues to suffer, from severe polio and post-polio induced paralysis in his abdomen, lower back and right leg, and is substantially limited in his ability to ambulate, stand upright and erect, and walk.

18.   On September 7, 2003, at or near the end of the aforementioned baseball game, Plaintiff, DEMAR, was sitting in a seat in the stands of US Cellular Field.

19.   On September 7, 2003, at or near the end of the aforementioned baseball game, Plaintiff witnessed large crowds of people exiting the field, creating a long lines of patrons who were slowly exiting from the seating area of US Cellular Field.

20.   At all times relevant, Plaintiff was aware that the restroom facilities and elevators at US Cellular Field are not adequate to quickly accommodate the large crowds that gather at or near the end of baseball games at US Cellular Field. From past experience, Plaintiff believed

4

that the crowds would dissipate and disburse within minutes, thereby allowing Plaintiff to use the restroom and elevator facilities without Plaintiff being required, under his disability, to walk or stand upright and erect for long periods of time.

21. On September 7, 2003, at or near the end of the aforementioned baseball game, while Plaintiff was sitting in a seat in the stands of US Cellular Field, he was approached by UNKNOWN DEFENDANTS, at least six (6) security personnel employed by the SOX, AT YOUR SERVICE, and/or SDI as aforementioned (hereinafter referred to as "Defendants' security personnel" or "security personnel"), who then and there identified themselves as security demanded that Plaintiff immediately leave his seat and exit the facility.

22. At said time and place, Plaintiff was exercising all due care and caution for his safety and security.

23. Plaintiff advised said security personnel that he was under a disability, that he had substantial difficulty standing upright and erect, and that he had no desire to remain at US Cellular Field but that he needed to wait a short time for the crowds in the restroom and elevator facilities to dissipate. Plaintiff explained to said security personnel that he would exit US Cellular Field immediately after using the restroom facility.

24. At the time of Plaintiff's initial contact and conversation with Defendants' security personnel, less than ten (10) minutes had passed since the baseball game had ended. Plaintiff was not the last baseball fan in the park, and Plaintiff was not unreasonably extending his visit to US Cellular Field for reasons unrelated to his disability.

25. At said time and place, on September 7, 2003, Defendants' security personnel without Plaintiff's authorization or consent, took possession of Plaintiff's walking cane and refused

5

to immediately return it to Plaintiff, despite Plaintiff DEMAR's repeated demands that it be immediately returned, and despite DEMAR's explanation to said security personnel that he required his walking cane for assistance in walking, as a result of his disability.

26. At said time and place, on September 7, 2003, Defendants' security personnel without Plaintiff's authorization or consent, surrounded, physically restrained, physically lifted and physically transported Plaintiff DEMAR's body by force from his seat at US Cellular Field.

27. At said time and place, on September 7, 2003, Defendants' security personnel, without Plaintiff's authorization or consent, physically removed the disabled Plaintiff to the Ground Level, where they brought him to a waiting ambulance operated by Defendant SUPERIOR.

28. Upon information and belief, on September 7, 2003, Defendants' security personnel then and there directed the employees, medical personnel, driver and/or agents of Defendant SUPERIOR to transport the Plaintiff to a medical facility known as Mercy Hospital, located at 2525 S. Michigan Avenue, Chicago, Illinois 60616.

29. At all relevant times, on September 7, 2003, Plaintiff DEMAR had no need or want of medical attention, treatment or care, but in fact repeatedly stated to Defendants' employees, personnel and agents that he was perfectly healthy except for his disability.

30. At all relevant times, on September 7, 2003, Plaintiff DEMAR never requested medical attention, treatment or care, but in fact repeatedly stated to Defendants' employees, personnel and agents that he specifically did not consent to unauthorized and unnecessary medical attention, treatment or care.

31. On September 7, 2003, Defendant SUPERIOR, by and/or through its agents and/or employees, ambulance personnel, transported Plaintiff DEMAR by ambulance from US Cellular Field to Mercy Hospital.

6

32.    At all relevant times, on September 7, 2003, Defendant SUPERIOR, by and/or through its agents and/or employees, carried, transported, moved, handled and otherwise had physical contact with the Plaintiff's body, despite the fact that Plaintiff never consented, and expressly refused to consent, to any contact by Defendant SUPERIOR, or its agents and/or employees.

33.    On September 7, 2003, Plaintiff DEMAR refused to be examined or treated by doctors and staff at Mercy Hospital, and was not examined or treated.

34.    On September 7, 2003, as a result of Defendants' aforementioned collective actions, Plaintiff was stranded nearly two (2) miles from US Cellular Field, where his vehicle remained parked.

35.    On September 7, 2003, Plaintiff was forced to fend for himself in his return to US Cellular Field, where he was able to retrieve his vehicle and, finally, return home.

36.    Thereafter, Plaintiff DEMAR received an ambulance bill from Defendant SUPERIOR for $441.38. Upon receipt of said invoice, Plaintiff contacted SUPERIOR repeatedly and demanded that they cease and desist in their attempts to collect for the unreasonable, unlawful and unnecessary transport by SUPERIOR of the Plaintiff that resulted in a violation of Plaintiff's federal and state rights, and in Plaintiff being stranded nearly two (2) miles from his vehicle and without need or want of medical attention or care.

37.    Upon information and belief, Defendant SUPERIOR ignored Plaintiff's letters and demands, and has reported said amount to the national credit bureaus as being delinquent. Upon information and belief, Plaintiff's good credit and reputation have been damaged.

7

38.   Defendant, the SOX, through its representative, responded to Plaintiff's allegations in writing, stating merely that Plaintiff's allegations were "exaggerated" and "inaccurate," but never denying that the incidents complained of herein occurred in substance and in fact.

39.   As a result of Defendants' discriminatory and tortious conduct, and their unwillingness to comply with the ADA, the Plaintiff DEMAR was forced to hire an attorney and file the instant lawsuit to deter the same conduct by the Defendants in the future, and to insure that no other individuals with disabilities are required to endure the severe embarrassment, emotional distress and discriminatory treatment that he endured.

## COUNT I: VIOLATION OF THE ADA
### (Robert DeMar v. The Chicago White Sox, Ltd. and CHISOX Corporation)

40.   Plaintiff hereby incorporates paragraphs 1 through 39 of this Complaint as paragraphs 1 through 39 of this Count I, as though fully set forth herein.

41.   As previously set forth, Plaintiff bases his claim in part on Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et. seq.*, and its implementing regulations.

42.   The Plaintiff is an individual who is keenly interested in and intends to attend another baseball game at US Cellular Field. However, in order to obtain full use and enjoyment of the SOX's public accommodations, Plaintiff seeks to enjoin Defendants' discriminatory conduct to prevent further harm.

43.   US Cellular Field, which includes establishments located within the ballpark, is a service, program, or activity within the meaning of 42 U.S.C. § 12132 and is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7) because its operations affect commerce, and the ballpark is a facility that includes a stadium, restaurants, bars, beverage

and merchandise concessions, clubs, amusements, and media facilities, 42 U.S.C. §§ 12132, 12181(7)(B), (C), (E), 12182; 28 C.F.R. §§ 36.104.

44.   Defendants, the SOX, discriminated against the Plaintiff on the basis of his disability, depriving him of the full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations in the Defendants' places of public accommodation. Accordingly, Defendants' actions and omissions violated 42 U.S.C. § 12182(a) and 42 U.S.C. § 12182(b)(1)(A)(I).

45.   Defendants, the SOX, failed to make reasonable accommodations in policies, practices, and procedures, when such modifications were necessary to insure Defendants' services, facilities, privileges, advantages, and accommodations were available to the Plaintiff in the most integrated setting possible.  Accordingly, Defendants the SOX violated 42 U.S.C. § 12182(B)(2)(A)(ii) and 42 U.S.C. § 12182 (b)(1)(B).

46.   Defendants, the SOX, also failed to remove architectural barriers in existing facilities or offer services in alternative settings when it was readily achievable to do so.  28 C.F.R. 36.304.

47.   Defendants, the SOX's, unlawful conduct and/or failures to act violated, and continue to violate, Plaintiff's federal statutory rights, under Title III of the ADA, to be free from discrimination on the basis of disability, "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation."  42 U.S.C. § 12182, *et. seq.*

48.    Accordingly, the Plaintiff, ROBERT DEMAR, sustained damages as a direct result of Defendants', the SOX's, actions, omissions, practices, policies and procedures, described above, which violated the ADA.

## COUNT II: INJUNCTIVE RELIEF
### (Robert DeMar v. The Chicago White Sox, Ltd. and CHISOX Corporation)

49.    The Plaintiff hereby incorporates paragraphs 1 through 48 of this Complaint as paragraphs 1 through 48 of this Count II, as though fully set forth herein.

50.    The Plaintiff reasonably expects to use the SOX's services, activities, facilities, privileges, advantages and public accommodations in the future, thus there is a real threat of future injury if the Defendants' discriminatory policies, practices, and procedures do not immediately end. The threat is particularly great due to the fact that the SOX sponsor baseball games that are appealing to the Plaintiff. Accordingly, since the Plaintiff intends to attend baseball games at US Cellular Field in the future, it is necessary that the SOX's discriminatory practices end immediately to prevent further harm to the Plaintiff.

51.    As a result of the SOX's barriers, practices, policies and procedures, Plaintiff has suffered, and will continue to suffer irreparable injury due to the Defendants' denial of his statutory rights. There are reasonable grounds to believe that Defendants will continue to engage in the acts and practices prohibited by the ADA. Consequently, injunctive relief is necessary to insure that Defendants comply with the law.

52.    Unless injunctive relief is granted, Plaintiff will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law.

53.     In order to enforce his rights under the law, Plaintiff was forced to retain counsel and thus he is entitled to recover attorney's fees, costs and expenses.

## PENDENT STATE LAW CLAIMS

### COUNT III:   ASSAULT AND BATTERY
(Robert DeMar v. All Defendants)

54.     The Plaintiff hereby incorporates paragraphs 1 through 53 of this Complaint as paragraphs 1 through 53 of this Count III, as though fully set forth herein.

55.     The aforementioned actions of Defendants' employees and/or agents constituted an assault in that said employees and/or agents intentionally and unlawfully threatened physical injury, and/or caused Plaintiff to fear imminent physical injury, coupled with the apparent present ability of said employees and/or agents to effectuate said injury.

56.     The aforementioned actions of Defendants' agents and/or employees against Plaintiff constituted a battery in that said employees and/or agents intended to cause harmful and/or offensive contact with Plaintiff without Plaintiff's consent, and that a harmful and/or offensive contact resulted.

57.     The aforementioned actions of Defendants' agents and/or employees against Plaintiff constituted affirmative acts intended to threaten and cause unpermitted contact to the Plaintiff.

58.     Defendants, through their agents and/or employees, had a duty to refrain from committing an unlawful assault and battery upon Plaintiff.

11

59. Defendants, through their agents and/or employees, breached their duty to Plaintiff by committing said assault and battery upon Plaintiff.

60. As a direct and proximate result of the Defendants' foregoing acts and/or omissions, Plaintiff suffered personal and pecuniary damages, and was prevented from engaging in his ordinary affairs and duties.

61. Defendants are responsible for Plaintiff's damages and injuries caused by their employees and/or agents due to the fact that said wrongful actions were committed with actual or apparent authority of Defendants.

## COUNT IV:  FALSE IMPRISONMENT
### (Robert DeMar v. All Defendants)

62. The Plaintiff hereby incorporates paragraphs 1 through 61 of this Complaint as paragraphs 1 through 61 of this Count IV, as though fully set forth herein.

63. At all times relevant, on September 7, 2003, the Defendants, by and through their agents and/or employees, unlawfully, physically and under the threat of force, restrained, detained and confined the Plaintiff.

64. At all times relevant, on September 7, 2003, the Plaintiff did not strike or initiate any contact with Defendants' employees and/or agents.

65. At all times relevant, on September 7, 2003, the Plaintiff offered no resistance to the unlawful actions by Defendants' employees and/or agents.

66. At all times relevant, on September 7, 2003, the Plaintiff never consented to any of the foregoing acts.

67.     At all times relevant, on September 7, 2003, the Defendants, by and through their agents
        and/or employees, did not have reasonable cause to detain the Plaintiff in the manner set
        forth herein.

68.     At all times relevant, on September 7, 2003, the Defendants' agents and/or employees were
        acting within the scope of their employment by Defendants, and were acting with the
        authority vested upon them by Defendants.

69.     At all times relevant, on September 7, 2003, the Defendants' agents and/or employees were
        acting in furtherance of the business of Defendants.

70.     As a direct and proximate result of the false imprisonment by Defendants' agents and/or
        employees, the Plaintiff was injured and will continue to incur suffering and emotional
        distress.

### COUNT V:   NEGLIGENCE
**(Robert DeMar v. The Chicago White Sox, Ltd., CHISOX Corporation, At Your Service,
Inc., At Your Service, L.L.C., and SDI Security)**

71.     The Plaintiff hereby incorporates paragraphs 1 through 70 of this Complaint as paragraphs
        1 through 70 of this Count V, as though fully set forth herein.

72.     At all times relevant, Defendants had a duty to the public, generally, and the Plaintiff,
        specifically, to exercise reasonable and proper care in the selection, retention, discipline,
        evaluation, supervision and termination of their employees and personnel.

73.     At all times relevant, Defendants had a duty to exercise reasonable care for the safety of
        patrons at the aforesaid baseball game.

13

74.    At all times relevant, Defendants breached the foregoing duty and was negligent in one or
more of the following respects, in that they:

    a.    negligently, carelessly, improperly and unreasonably allowed their employees
involved in the acts recited herein to continue in their duties as employees
when they knew or in the exercise of reasonable care, should have known,
that the persons they employed had a propensity to engage in violent
behavior;

    b.    negligently, carelessly, improperly and unreasonably failed to properly train
Defendants' partners, agents and/or employees in crowd safety and control
policies and procedures;

    c.    negligently, carelessly, improperly and unreasonably failed to properly
supervise the persons they employed;

    d.    negligently, carelessly, improperly and unreasonably failed to properly
evaluate the persons they employed;

    e.    negligently, carelessly, improperly and unreasonably failed to stop and/or halt
the acts taken against the Plaintiff by the persons they employed;

    f.    negligently, carelessly, improperly and unreasonably permitted their
employees to confront, detain and remove the Plaintiff when they knew or
should have known it would not be done properly;

    g.    negligently, carelessly, improperly and unreasonably failed to implement
adequate response plans and procedures for occurrences and/or patrons
having unwanted contact with Defendants' personnel; and

    h.    negligently, carelessly, improperly and unreasonably failed to control,
monitor and prevent their employees, partners, and/or agents from causing
bodily harm, injury and distress to the Plaintiff.

75.    As a direct and proximate result of one or more of the foregoing acts or omissions by
Defendants, the Plaintiff was injured and will continue to incur suffering and emotional
distress.

## COUNT VI: NEGLIGENCE
**(Robert DeMar v. Superior Air-Ground Ambulance Services, Inc.)**

76. The Plaintiff hereby incorporates paragraphs 1 through 75 of this Complaint as paragraphs 1 through 75 of this Count VI, as though fully set forth herein.

77. At all times relevant, Defendant had a duty to the public, generally, and the Plaintiff, specifically, to exercise reasonable and proper care in the selection, retention, discipline, evaluation, supervision and termination of their employees and personnel.

78. At all times relevant, Defendant had a duty to exercise reasonable care for the safety and security of persons who are presented and/or arrive at Defendant's ambulance for medical treatment.

79. At all times relevant, Defendant breached the foregoing duty and was negligent in one or more of the following respects, in that they:

    a. negligently, carelessly, improperly and unreasonably allowed its employees involved in the acts recited herein to continue in their duties as employees when they knew or in the exercise of reasonable care, should have known, that the persons they employed had a propensity to engage in careless behavior;

    b. negligently, carelessly, improperly and unreasonably failed to properly train Defendant's agents and/or employees in patient evaluation policies and procedures;

    c. negligently, carelessly, improperly and unreasonably failed to properly supervise the persons they employed;

    d. negligently, carelessly, improperly and unreasonably failed to properly evaluate the persons they employed;

    e. negligently, carelessly, improperly and unreasonably failed to stop and/or halt the acts taken against the Plaintiff by the persons they employed;

    f. negligently, carelessly, improperly and unreasonably permitted their employees to forcibly restrain and remove the Plaintiff to Mercy Hospital;

15

g.     negligently, carelessly, improperly and unreasonably failed to implement adequate response plans and procedures for occurrences and/or persons having unwanted contact with Defendant's personnel; and

h.     negligently, carelessly, improperly and unreasonably failed to control, monitor and prevent their employees, partners, and/or agents from causing bodily harm, injury and distress to the Plaintiff.

80.     As a direct and proximate result of one or more of the foregoing acts or omissions by Defendant, the Plaintiff was injured and will continue to incur suffering and emotional distress.

## COUNT VII:   NEGLIGENCE
### (Robert DeMar v. Unknown Defendants - Individuals)

81.     The Plaintiff hereby incorporates paragraphs 1 through 80 of this Complaint as paragraphs 1 through 80 of this Count VII, as though fully set forth herein.

82.     At all times relevant, the Unknown Defendants had a duty to the public, generally, and the Plaintiff, specifically, to exercise reasonable and appropriate care and precaution commensurate with their positions, respectively, as security personnel and ambulance personnel.

83.     At all times relevant, the Unknown Defendants had a duty to exercise reasonable care for the safety of patrons at the aforesaid baseball game and directly outside US Cellular Field.

84.     At all times relevant, the Unknown Defendants breached the foregoing duty and were negligent in one or more of the following respects, in that they:

a.     negligently, carelessly, improperly and unreasonably failed to use proper care by grabbing, pushing, lifting, carrying, dragging, and detaining the plaintiff;

b.     using unreasonable force by detaining the plaintiff;

16

c.   they improperly and unreasonably detained the plaintiff thereby restraining his freedom;

d.   they unreasonably failed to stop other security personnel of Defendants from hitting, grabbing, pushing, lifting, carrying, and dragging the plaintiff;

e.   they unreasonably failed to stop other security personnel of Defendants from unreasonably detaining the plaintiff;

f.   the security personnel defendants directed or allowed the false imprisonment of plaintiff by agents and/or employees of Defendants the SOX, AT YOUR SERVICE, and/or SDI;

g.   the security personnel defendants directed or allowed the false imprisonment of plaintiff by Defendant SUPERIOR; and

h.   the ambulance personnel defendants unreasonably failed to request, obtain or require the consent of Plaintiff prior to restraining Plaintiff and transporting Plaintiff to Mercy Hospital against his will and without medical justification.

85.   As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, the Plaintiff was injured and will continue to incur suffering and emotional distress.


## COUNT VIII:   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Robert DeMar v. All Defendants)

86.   The Plaintiff hereby incorporates paragraphs 1 through 85 of this Complaint as paragraphs 1 through 85 of this Count VIII, as though fully set forth herein.

87.   As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, the Plaintiff experienced a direct impact to his body.

88.   As a direct and proximate result of one or more of the foregoing acts or omissions by Defendants, the Plaintiff was injured and will continue to incur suffering and emotional distress.

17

## COUNT IX:   RESPONDEAT SUPERIOR
### (Robert DeMar v. All Defendants)

89.    The Plaintiff hereby incorporates paragraphs 1 through 88 of this Complaint as paragraphs 1 through 88 of this Count IX, as though fully set forth herein.

90.    At all times relevant, each of the Defendants was vicariously liable for the actions of the agents and employees they employed, including unknown security guards and unknown paramedics and ambulance drivers, respectively.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, **ROBERT DEMAR**, respectfully prays this Court grant the following relief:

1.   Assume jurisdiction over the claims of this Complaint;

2.   Enter a declaratory judgment stating that the practices, policies, and procedures of the Defendants, **THE CHICAGO WHITE SOX, LTD.,** and **CHISOX CORPORATION, a corporation,** have subjected the Plaintiff to discrimination in violation of Title III of the ADA;

3.   Issue an Order permanently enjoining **THE CHICAGO WHITE SOX, LTD.,** and **CHISOX CORPORATION, a corporation,** from violating Title III of the ADA, 42 U.S.C. § 12181, *et. seq.*, by failing to make modifications to policies and procedures to insure equal access to goods and services in the most integrated setting; and failing to remove discriminatory policies and procedures;

18

4. Grant Plaintiff leave to amend his Complaint upon discovering the identities of the **UNKNOWN DEFENDANTS** named herein;

5. Award Plaintiff reasonable and appropriate actual and compensatory damages against all Defendants in an amount determined to be appropriate by this Court;

6. Award Plaintiff punitive damages in an amount to be determined at trial;

7. Award Plaintiff reasonable attorney fees and costs of suit; and

8. Grant Plaintiff such other and further relief as this Court may deem just and proper and equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 6, 2005

Respectfully submitted,

Matthew T. Martell, his attorney

Matthew T. Martell
Law Office of Matthew T. Martell
7557 W. 63rd Street
Summit, Illinois  60501
ARDC # 6271321
(708) 924-9000