IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 1 5 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

ROBERT DEMAR,

    Plaintiff,

v.

THE CHICAGO WHITE SOX, LTD., CHISOX CORPORATION, a corporation, AT YOUR SERVICE, INC., a corporation, AT YOUR SERVICE, L.L.C., SDI SECURITY, INC., a corporation, and SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC., a corporation, and UNKNOWN DEFENDANTS,

    Defendants.

No. 05 C 5093

Judge: Hon. Samuel Der-Yeghiayan

## NOTICE OF FILING

To:   See attached Service List

Please take Notice that on December 15, 2005, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois the attached:

- Plaintiff's Response to Defendants' Chicago White Sox, Ltd., Chisox Corporation, At Your Service, Inc. and At Your Service, LLC, Motion to Dismiss

Matthew T. Martell
Attorney for Plaintiff
7557 W. 63rd Street
Summit, IL 60501
(708) 924-9000
Attorney Number: 6271321

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2005, I served a copy of the foregoing Notice, together with said document(s), upon the attorney(s) named on the attached service list, a true and correct copy thereof in a sealed envelope, postage prepaid, by depositing the same in the U.S. Mail in Chicago, Illinois, 60604, at 5:00 p.m. on December 15, 2005.

Respectfully submitted,

Matthew T. Martell
Attorney for Plaintiff
7557 W. 63rd Street
Summit, IL 60501
(708) 924-9000
Attorney Number: 6271321

## SERVICE LIST

Re: Demar v. White Sox, Superior, Et al.
05 C 5093

ATTORNEYS FOR CHICAGO WHITE SOX, CHISOX,
AT YOUR SERVICE, INC. AND AT YOUR SERVICE, L.L.C.

Robert T. Shannon
James C. Vlahakis
Chad Kason
Hinshaw & Culbertson
222 N. LaSalle Street, #300
Chicago, IL 60601


ATTORNEYS FOR SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC.

Summer E. Heil
Jeffrey H. Lipe
Brigitte C. Brady
Williams Montgomery & John Ltd.
20 N. Wacker Dr., #2100
Chicago, IL 60606

FILED
DEC 15 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT DEMAR,

    Plaintiff,

v.

THE CHICAGO WHITE SOX, LTD., CHISOX CORPORATION, a corporation, AT YOUR SERVICE, INC., a corporation, AT YOUR SERVICE, L.L.C., SDI SECURITY, INC., a corporation, and SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC., a corporation, and UNKNOWN DEFENDANTS,

    Defendants.

No. 05 C 5093

Judge: Hon. Samuel Der-Yeghiayan

## PLAINTIFF, ROBERT DEMAR'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COMES the plaintiff, Robert Demar, by and through his attorney, Matthew T. Martell, and for his response to the Motion to Dismiss filed on behalf of defendants Chicago White Sox, Ltd., Chisox Corporation, At Your Service, Inc. and At Your Service, LLC (collectively, the "Defendants"), states as follows:

### Introduction

This Court should deny Defendants' Motion to Dismiss, in its entirety, for the reason that Mr. Demar has adequately stated claims in his Complaint against defendants for violations of Title III of the Americans with Disabilities Act ("ADA") and state tort law. Defendants are not entitled to dismissal under Illinois state law, the ADA, FRCP 8(a) or 12(b)(6).

Defendants' Motion contains four primary arguments. First, Defendants argue that Plaintiff has not adequately challenged the physical facilities available at the ballpark. Second, Defendants

erroneously conclude that their security guards were within their rights to forcibly remove Mr. Demar from his seat at U.S. Cellular Field based solely upon Mr. Demar's statement to the guards that he had a disability that required him to wait for restroom crowds to disburse before he could use the ballpark restroom. Third, Defendants assert that Mr. Demar's tort claims are preempted by the Illinois Human Rights Act. Finally, Defendants argue that Mr. Demar has not stated a claim for false imprisonment. Defendants seek to minimize to a mere inconvenience the unprovoked assault, battery, confinement and physical removal of Mr. Demar by upwards of six (6) of Defendants' security guards.

From the outset, Defendants' contention that Mr. Demar told Defendants' security guards that he "could not walk or stand" misrepresents the allegations in Mr. Demar's Complaint. The Complaint states in paragraphs 17, 20 and 23 that Mr. Demar informed the guards that he had "difficulty" with mobility and could not walk or stand "for long periods of time." Thus, the asserted medical necessity set forth by Defendants finds no support in Mr. Demar's pleadings. Yet Defendants' repeated misstatement of this allegedly pled "fact" serves as the basis for nearly every substantive argument in their Motion. This misrepresentation is nothing more than an attempt to avoid responsibility for their shocking and deplorable conduct in this case.

## Counter Statement of Facts Relevant to Movants

Plaintiff Robert Demar has filed suit under Title III of the Americans with Disabilities Act and in tort for injuries sustained as a direct result of defendants' actions against plaintiff during his patronage of a Chicago White Sox baseball game at U.S. Cellular Field in Chicago, Illinois on September 7, 2003. Plaintiff is disabled as defined by the Americans with Disabilities Act in that he suffers from severe polio and post-polio induced paralysis in his abdomen, lower back and right

2

leg, and is substantially limited in his ability to stand upright and erect, and to walk. Mr. Demar's disability requires him to walk with his torso parallel to the ground, i.e. bent ninety degrees at the waist and supporting his torso and upper body with a walking cane. Mr. Demar was then and there protected from discrimination by defendants based upon his disability. 42 U.S.C. § 12181, *et. seq.*

At the conclusion of the baseball game, plaintiff remained seated at the stadium for a short time to allow for the large crowd of exiting baseball fans to use the restroom facilities and disburse. Then 72 years of age, Mr. Demar had attended many baseball games at the field and was well aware of the post-game formation of long restroom lines. Due to his disability, plaintiff could not easily move in large crowds, could not stand for extended periods in long restroom lines, and could not safely traverse wet and slippery bathroom floors while contending with the crush of exiting fans.

After approximately 10 minutes, while Mr. Demar remained seated in his ticketed seat, he was approached by upwards of six (6) security guards who demanded that he leave. Mr. Demar explained that he was disabled and had great difficulty standing and walking, but needed to use the restroom prior to his departure. He explained to the guards that his disability made standing and walking difficult and that in order to use the bathroom, he needed to wait for the large crowds to disburse from the restrooms. The guards–after being told of Mr. Demar's disability and requested accommodation–responded by seizing and confiscating Mr. Demar's walking cane, thereby making it nearly impossible for Plaintiff to stand or walk. The guards then surrounded Mr. Demar and lifted him from his seat, despite his protests. They carried Mr. Demar directly past the restroom to an elevator and transported him down to the ground level of the ballpark, over his protests. Once at ground level, the security guards approached a waiting ambulance and falsely informed the ambulance staff that Mr. Demar was in need of medical treatment.

3

**Argument**

I. **DEFENDANTS FAILED TO MAKE REASONABLE MODIFICATIONS IN POLICIES, PRACTICES OR PROCEDURES WHEN THE MODIFICATIONS WERE NECESSARY TO AFFORD GOODS, SERVICES, FACILITIES, PRIVILEGES, ADVANTAGES, OR ACCOMMODATIONS TO PLAINTIFF, IN VIOLATION OF TITLE III, 42 U.S.C. § 12182 and 28 C.F.R. § 36.302(a)**

    A. **The ADA mandate is not limited to reasonable modifications physical facilities; Defendants' Title II Argument Does not defeat Mr. Demar's Title III Complaint**

The ADA represents a broad congressional mandate to eliminate discrimination against the disabled and to integrate the disabled into the mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). Under Title III of the ADA, the Title under which Mr. Demar has brought this suit, "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who ... operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes:

> A failure to make *reasonable modifications* in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals, unless the entity can demonstrate that taking such steps would *fundamentally alter the nature* of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added).

Three requirements under Title III must be met before a covered entity will be obligated to provide a requested modification to a disabled individual. First, the requested modification must be reasonable. Second, the requested modification must be necessary for the disabled individual. Third, the requested modification must not fundamentally alter the nature of the services provided by the entity. *Martin*, 532 U.S. at 683 n. 38; *see* 42 U.S.C. § 12182(a), (b)(2)(A)(ii).

Rather than address Mr. Demar's allegations, Defendants conclude that: "[P]laintiff has not alleged that his injuries were caused by the layout of the ballpark or the number of bathroom

4

facilities. That being the case, plaintiff's complaint amounts to nothing more than state law tort claim for false imprisonment and/or battery, and there is no reason for this Court to then burden itself with a complex, yet unnecessary, ADA analysis." (Dfdt. MTD 2). Title III does not require Mr. Demar to make the (Title II) claims suggested by Defendants. Further, despite Defendants' remarks that the "complex", "unnecessary," and "burdensome" ADA analysis will "burden" and "preoccupy" this Court, Title III's requirements are not particularly complex, nor burdensome.

Title III of the ADA requires places of public accommodations to make reasonable modifications to their policies, practices, or procedures in an effort to accommodate disabled individuals. The use of "reasonable" as a modifier for "modifications" places a limitation on the types of modifications that a place of public accommodation must provide. See 42 U.S.C. § 12182(b)(2)(A)(ii). Determining whether a specific modification is reasonable requires an individualized inquiry under the circumstances of the particular case. *Martin*, 532 U.S. at 688. What is reasonable in one context may not be reasonable in another context. *See Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1048 (9th Cir.1998). The concerns and actions of the disabled individual and the covered entity make up the circumstances of the particular case.

In a private action under the ADA, a court may provide "any person who is being subjected to discrimination on the basis of disability in violation of" the Act injunctive relief, requiring a defendant to make its facility readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12188(a)(2). Discrimination prohibited by the Act includes a private entity's "failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good,

5

service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden" 42 U.S.C. § 12182(b)(2)(A)(iii). Where removal is not readily achievable, the entity incurs liability if it fails to make those goods, services and facilities "available through alternative methods if such methods are readily achievable," *Id.* § 12182(b)(2)(A)(v), that is, "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a).

Thus, in order to show discrimination under Title III of the ADA a plaintiff must allege and prove the refusal of full and equal enjoyment, *Bowers v. National Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 128 Ed. Law Rep. 670 (D.N.J. 1998); *Mayberry v. Von Valtier*, 843 F. Supp. 1160, 4 A.D.D. 1 (E.D. Mich. 1994), or denial of the opportunity to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation because of his or her disability. Generally, a plaintiff will need to provide specific facts which show how full and equal enjoyment is refused or how the opportunity to participate is denied. In addition, plaintiff will need to show enforcement of the discriminatory policy. For example, in *Bauer v. Muscular Dystrophy Ass'n, Inc.*, 268 F. Supp. 2d 1281, 14 A.D. Cas. (BNA) 1599 (D. Kan. 2003), a retailer's refusal to reconsider its initial refusal to sell alcohol to disabled person, whose symptoms mimicked the traits of intoxication, violated Title III of the ADA; such a modification was a necessary and reasonable means of providing disabled persons access to goods that were available to individuals without disabilities.

In this case, Plaintiffs' prima facie case depends on Mr. Demar's ability to allege the following: 1) that he is disabled; 2) that the ballpark is a place of public accommodation; and 3) that he was denied full and equal treatment (in Mr. Demar's case, access to the ballpark's restrooms) because of his disability. *See Tugg v. Towey*, 864 F.Supp. 1201, 1205 (S.D.Fla.1994); *see also Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1085 (D.Haw.2000). Plaintiff has properly pled a prima facie case under Title III. Defendants' Motion should be denied.

6

**B. Defendants' claim that "all patrons" are affected by large ballpark crowds has no impact on Mr. Demar's right to reasonable accommodation under Title III of the ADA**

Defendants allege that "all patrons" at the ballpark were subjected to crowds in the restroom, and that Plaintiff's ADA claim must fail because he cannot claim to have been "treated any differently than a non-disabled (sic) and/or intentionally singled out for differential treatment based upon his disability," citing *Assn. for Disabled Americans v. City of Orlando*, 153 F.Supp.2d 1310 (M.D. Fla. 2001) (Dfdt. MTD at 6). Despite Defendants' claims, *Assn. for Disabled Americans* was a Title II case that addressed allegations of non-compliant physical aspects of a sports arena and theater facility. *Id.* 153 F.Supp.2d at 1317. The court found that the plaintiffs had not demonstrated that the sports facilities' allegedly non-compliant physical aspects violated Title II. *Id.* 153 F.Supp.2d at 1322. Mr. Demar's case is brought pursuant to Title III of the ADA, not Title II, and raises no Title II challenges regarding the ballpark. Defendants' arguments regarding physical facility compliance are entirely irrelevant.

Furthermore, Title III of the ADA <u>expressly rejects</u> any requirement that a plaintiff show disparate impact or different treatment. "Title III of the ADA does not require a plaintiff to prove that her disability motivated the defendant's actions. A disability discrimination claim may be brought either on the theory that defendant failed to make reasonable accommodations or on a more conventional disparate treatment theory, or both. This is because the ADA not only protects against disparate treatment, it also creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.'" *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F.Supp. 962, 965 (N.D.Cal.1998); *Lentini v. California Ctr. for the Arts*, 370 F.3d 837, 846-47 (9th Cir.2004) ("It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA"); *Martin v. PGA Tour, Inc.*, 994 F.Supp. 1242, 1247-48 (D.Or.1998) ("Congress intended to protect disabled persons not just from intentional discrimination but also

7

from 'thoughtlessness,' 'indifference,' and 'benign neglect.'), *aff'd*, 204 F.3d 994; *see also McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir.2004) ("A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim.")(citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir.2003), *cert. denied*, 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004)).

In order to succeed on an accommodation claim under the ADA, the plaintiff need only show that he is a person with a disability and that the defendant failed to reasonably accommodate his disability. *Dunlap*, 996 F.Supp. at 965. It is the failure to provide reasonable accommodations that constitutes discrimination under Title III. *Id.*

A fact-intensive question, such as what constitutes a reasonable modification in policy, is in most circumstances ill-suited for resolution even at the summary judgment stage, *Powers v. MJB Acquisition Corp.*, 993 F. Supp. 861, 125 Ed. Law Rep. 420 (D. Wyo. 1998), much less on a motion to dismiss. If Mr. Demar meets the burden of showing that his requested accommodation is reasonable, Defendants must make the requested modification, *Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052, 22 A.D.D. 669 (5th Cir. 1997); *Martin*, 994 F. Supp. 1242 (D. Or. 1998) unless Defendants plead and meet their burden of proving that the requested modification would fundamentally alter the nature of the public accommodation.

In this case, Defendants' policy, whether written or secret, as evidenced by the conduct of Defendants' security guards, is that disabled persons will not receive additional time at the conclusion of the ball game to use the restroom facilities. Mr. Demar's requested modification to the policy was, and is, that a disabled person be accommodated by allowing him or her reasonable time to use the restroom facilities after a baseball game.

Plaintiff's requested modification is reasonable in every respect. In light of the limited amount of time sought (in nearly every case, a matter of only minutes), the fact that no additional

8

expense will be borne by Defendants, and the fact that the nature of the baseball game and the nature of patronage at U.S. Cellular Field will not be fundamentally altered by the requested accommodation, Defendants have no legal basis under Title III for denying Mr. Demar's requested accommodation. The Motion should be denied.

## II. DEFENDANTS' CLAIM THAT MR. DEMAR'S COMPLAINT VIOLATES FRCP 8(a) AND FAILS TO PLACE DEFENDANTS ON NOTICE OF HIS CLAIM IS WITHOUT MERIT, AS THE COMPLAINT PROVIDES SUFFICIENT FACTS TO ALLOW THE COURT AND DEFENDANTS TO UNDERSTAND THE GRAVAMEN OF THE COMPLAINT AND CONCLUDE THAT MR. DEMAR COULD BE ENTITLED TO RELIEF

### A. Plaintiff's Complaint Contains a Short and Plain Statement of the Claim, Including Operative Facts Upon Which his Complaint is Based, Showing that Mr. Demar Is Entitled to Relief, as Required by Rule 8(a)

Defendants have filed a 14-page Motion reciting selected facts from Mr. Demar's Complaint, misconstruing selected other facts from the Complaint as described herein, and discussing and attacking Mr. Demar's theories of liability and entitlement to relief. Defendants' argument that Plaintiff's Complaint violates Rule 8(a)(2) is entirely without merit.

"The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citing Fed.R.Civ.P. 8(a)(2)); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir.2001). This Court should find that the Complaint is adequate under this liberal pleading standard.

### B. Defendants' Motion Misstates the Facts Pleaded in Mr. Demar's Complaint and Then Argues that Under The Misstated Facts, Mr. Demar has not Complied with Rule 8(a)

Defendants' Rule 8(a) argument is based upon Defendants taking enormous liberties with

9

the facts set forth in Mr. Demar's Complaint. For example, although Mr. Demar's Complaint plainly sets forth a statement of his disability and the fact that Mr. Demar cannot "walk or stand upright and erect <u>for long periods of time</u>" (Cmplt. at ¶¶ 17, 20, 23 (emphasis added); acknowledged as pleaded in Dfdt. MTD at 1, 4), Defendants attempt throughout their Motion to justify their conduct as "reasonable" and "prudent" because Mr. Demar allegedly stated that he "could not walk or stand" (Dfdt. MTD at 3, 12, 13). As noted, Defendants' deletion of "for long periods of time" from the phrase "could not walk or stand" is not part of Mr. Demar's pleadings. Why Defendants have failed to argue the facts contained in Mr. Demar's Complaint is unknown. In any event, Defendants' argument regarding their "reasonable" and "prudent" act of forcibly removing Mr. Demar for unnecessary, undesired medical evaluation is directly contradicted by Mr. Demar's pleadings.

Defendants ask this Court to accept their explanation that they believed Mr. Demar was in need of medical attention because he stated that he could not walk or stand, yet Mr. Demar's Complaint plainly states that Defendants confiscated his walking cane (Cmplt. ¶ 25) after being advised by Mr. Demar of his disability and inability to walk or stand "<u>for long periods of time</u>." Defendants' Motion makes absolutely no distinction between disabled persons as defined by the ADA and persons needing immediate medical attention.

It follows precisely from Defendants' argument that in Defendants' view security personnel at U.S. Cellular Field would be justified–not as medical professionals, but as security guards–in forcibly restraining and removing <u>for medical evaluation</u> a legally blind person who informed guards that he had poor vision or a deaf person who indicated a difficulty hearing. Mr. Demar's partial paralysis disability is no different. Defendants' Motion in this regard is grossly disingenuous insofar as it supports this express violation of Title III of the ADA. Defendants violated Mr. Demar's right to a modification under the ADA, as properly pled in Mr. Demar's Complaint.

  C. **As Set Forth in Section I(A) Above, The ADA mandate is not limited to reasonable modifications to physical facilities, and Mr. Demar's Failure to Complain of Physical Facility Inadequacy is Neither Relevant Nor a Violation of Rule 8(a)**

Defendants emphasize the lack of a per se attack by Mr. Demar on the structural facilities at the ballpark and argue that absent such an attack, no ADA claim will lie. (Dfdt. MTD 8). As previously argued in Section I(A) above, Defendants' claim does not accurately reflect the law under Title III of the ADA. Rule 8(a) requires a plaintiff to plead sufficient facts to place a defendant on notice of his claims, but it does not require him to plead facts not relevant to his specific claims.

Defendants' argument that it is "important" to note "what the complaint *does not say*" (Dfdt. MTD 6, italics in original) attempts to imply that a deficiency exists where an ADA complainant fails to plead a Title II theory of liability for a Title III claim. Mr. Demar's claim that Defendants failed to make reasonable accommodations in policies, practices, and procedures, when such modifications were necessary to insure Defendants' services, facilities, privileges, advantages, and accommodations were available to the Plaintiff in the most integrated setting possible, as required by 42 U.S.C. § 12182(B)(2)(A)(ii) and 42 U.S.C. § 12182 (b)(1)(B) is, standing alone, actionable under the ADA. Defendants' reference to potential Title II violations are irrelevant.

 III. **MR. DEMAR'S PENDENT STATE LAW CLAIMS MIGHT BE PREEMPTED IF HIS STATE LAW CLAIMS RELIED UPON A DUTY IMPOSED BY THE IHRA, BUT EACH AND EVERY STATE LAW CLAIM EXISTS INDEPENDENTLY AND NO PREEMPTION OCCURS UNDER ILLINOIS LAW**

  A. **Plaintiff's State Law Claims are not "inextricably linked" to his ADA Claim, as Defendants' Conduct Gave Rise to Long-Recognized Tort Actions which Exist Wholly Separate and Apart from the IHRA**

Defendants mistakenly argue that Mr. Demar's state law claims for battery, assault, false imprisonment, negligence and negligent infliction of emotional distress are preempted by Sections

11

5/8-111(C) and 5/1-102(A) of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et. seq.* Defendants' conclusion is apparently based upon their belief that Mr. Demar's tort claims are dependent upon a breach of the same duty giving rise to Plaintiff's ADA claims. This is not true. The source of the legal duty underlying each of Plaintiff's state law claims is based upon long-recognized tort law that exists independently and apart from a cause of action for Defendants' ADA violations or any claim under the IHRA.

The Illinois Supreme Court has held that common law claims are preempted if they are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517, 227 Ill.Dec. 98, 687 N.E.2d 21, 23 (1997). The IHRA does not bar common law tort claims simply because they are "factually related to incidents of sexual harassment," *Id.* at 516, 227 Ill.Dec. 98, 687 N.E.2d at 23, or in Mr. Demar's case, disability discrimination. Rather the question is whether the common law claim is premised upon legal obligations and prohibitions that exist as a matter of Illinois law only under the Act and have no other independent foundation. *See, e.g., Bartoli v. Applebee's Restaurant*, No. 00 C 5954, 2001 WL 40798, at *2 (N.D.Ill. Jan. 17, 2001). If the "<u>plaintiff has established a basis for imposing liability on the defendant independent of any statutory cause of action under the Act</u>," <u>the claims are not preempted by the IHRA</u>. *Maksimovic*, 177 Ill.2d at 514, 227 Ill.Dec. 98, 687 N.E.2d at 22 (emphasis added).

In *Temores v. Cowen*, 289 F.Supp.2d 996, 1007 (N.D.Ill.2003), the Court concluded that the same was true of an Intentional Infliction of Emotional Distress ("IIED") claim by stating,

> "Such claims have been recognized by the Illinois courts as independent actions since long before the adoption of the IHRA. *See Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961). The Court is cognizant of the fact that the Seventh Circuit recently found an IIED claim against an employer that "depend[ed] on allegations of sexual harassment" to be preempted by the IHRA. *Quantock v. Shared Mktg. Services, Inc.*, 312 F.3d 899, 905 (7th Cir.2002). But in this regard, the final word on whether an Illinois statute preempts an Illinois claim comes from Illinois' highest court, which in *Maksimovic* rejected an analysis based on the factual relationship between a claim and the provisions of the IHRA in favor of an analysis based on the source of the legal duty underlying the claim."

12

The Illinois Supreme Court has specifically and unequivocally held that assault, battery and false imprisonment "are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the [IHRA]" and thus are not preempted by the state statute. *Maksimovic*, 177 Ill.2d at 517. Mr. Demar's state law claims are likewise not preempted.

While Defendants cite certain cases where the courts have found preemption under the IHRA, the plaintiffs in such cases <u>relied upon alleged discrimination</u> as an element of the state law tort claim. The Seventh Circuit addressed this issue in the context of employment discrimination in *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir.2000), stating:

> The IHRA prohibits employment discrimination based on a person's handicap. 775 ILCS 5/1-101, *et seq*. The IHRA preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning of [that] statute." *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273, 1276 (Ill.1994). However, where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA. That is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not "furnish[ ] the legal duty that the defendant was alleged to have breached," the IHRA does not preempt a state law claim seeking recovery for it. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21, 23 (1997) (holding that the plaintiff stated independent state law tort claims for assault, battery and false imprisonment that were not inextricably linked to her claim of sexual harassment).

Defendants' interpretation of Illinois law regarding IHRA preemption of state law claims directly contradicts the mandate of the Illinois Supreme Court in *Maksimovic*. The Court must favor the Illinois Supreme Court's interpretation of Illinois law over Defendants'. Plaintiff's state law claims relate to a course of conduct by Defendants wholly separate from Plaintiff's ADA claims, and they are thus not preempted by the IHRA.

### IV. MR. DEMAR HAS PROPERLY STATED A CLAIM FOR FALSE IMPRISONMENT

**A.   Defendants' Argument that Plaintiff has Pled himself out of Court is Premised upon Defendants' Misstatement of the allegations of the Complaint**

Section "D" of Defendants' Motion again takes inexplicable liberties with the facts in Mr.

13

Demar's Complaint, only to argue that under (Defendants') <u>altered and revised facts</u>, Plaintiff cannot prevail. As explained in Section II(B) above, however, the Complaint plainly sets forth a statement of his disability and that Mr. Demar cannot "walk or stand upright and erect <u>for long periods of time</u>" (Cmplt. ¶¶ 17, 20, 23 (emph. added); Dfdt. MTD 1,4). Defendants' claim that Mr. Demar "complained that he could not walk or stand" (Dfdt. MTD 12). This <u>revised "fact"</u> is not contained in the Complaint. Yet based upon this <u>revised, unpled "fact</u>," Defendants argue that "[a]t most, plaintiff has insufficiently pled that the defendants erred in determining that medical attention was prudent." (Dfdt. MTD 12). This conclusion is not based upon the facts pled, and is erroneous.

Defendants are obviously aware of the difference between the phrases "walk or stand for long periods of time" and "complained that he could not walk or stand," but they seek to blur the distinction in an effort to cloak their outrageous conduct against Mr. Demar by arguing that surrounding, confining and physically carrying an otherwise-healthy, but disabled, individual out of the ballpark against his will for unnecessary "medical attention" was a "prudent" exercise of discretion by their security personnel. (Dfdt. MTD at 12). Plaintiff has not pled himself out of court where the alleged facts pled were not, in fact, pled by Mr. Demar, but were created by Defendants for purposes of their Motion.

### B. Count IV of Plaintiff's Complaint States a Claim for False Imprisonment and Adequately Alleges Unreasonableness

Defendants once again attempt to base their arguments for dismissal upon erroneous facts not contained in–and directly contradicted by–Plaintiff's pleadings. Defendants argue that if Mr. Demar was "imprisoned" by Defendants' security guards, the seizure was justified based upon Mr. Demar's "own admission ... that he could not walk or stand." (Dfdt. MTD 13). As argued at length in the above sections, Defendants' argument that Mr. Demar claimed that "he could not walk or stand" is simply false and was not pled by Mr. Demar.

14

Equally incorrect is Defendants' claim that, "Plaintiff does not allege that the defendants made any "threat of force or arrest." (Dfdt. MTD 13). Mr. Demar's Complaint, Count IV, False Imprisonment, plainly states, "At all times relevant, ... the Defendants ... physically and under the threat of force, restrained, detained and confined the Plaintiff." (Cmplt. ¶ 63).

  **C.** **Count IV of Plaintiff's Complaint States a Claim for False Imprisonment and Defendants' Suggestion that Plaintiff Was Lying about his Disability and was a Trespasser Has No Support**

Defendants do not deny that Mr. Demar, a ball game ticket holder, was a lawful invitee of the White Sox Defendants on September 7, 2003, yet Defendants conclude their Motion with the remark that the disabled, 72 year old Plaintiff, from whom Defendants had forcibly confiscated a walking-assistance cane, may not have "appear[ed] to be telling the truth and was simply loitering, then he could be understood to be a trespasser ..." (Dfdt. MTD 13). In light of Defendants' repeated arguments that Mr. Demar was "prudent[ly]" removed from the ballpark by security guards for medical attention, this Court should entirely disregard Defendants' contradictory remark—once again unsupported by the pleadings—that Mr. Demar was physically removed as a trespasser.

WHEREFORE, for all of the reasons stated herein, Plaintiff, Robert Demar, respectfully requests that the Defendants' Motion to Dismiss be DENIED, in its entirety, and in the alternative that Plaintiff be granted leave to amend his Complaint pursuant to the Federal Rules of Civil Procedure, and for any other relief that this Court deems just and proper.

Respectfully submitted,

_/s/ Matthew T. Martell_
Matthew T. Martell
Attorney for Plaintiff
7557 W. 63rd Street
Summit, IL 60501
(708) 924-9000
Attorney Number: 6271321

15