## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ROBERT DEMAR ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  05 C 5093 |
| ) | |
| THE CHICAGO WHITE SOX, et al. ) | Judge Der-Yeghiayan |
| ) | |
| Defendants. ) | |

### **MOTION TO DISMISS**

NOW COME the defendants, Chicago White Sox, Ltd., ChiSox Corporation (hereinafter the "Sox defendants"), At Your Service, Inc. and At Your Service LLC, by and through their attorneys, Robert T. Shannon and James C. Vlahakis, and for their motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12 (e), state as follows:

#### I. **Introduction**

Plaintiffs bring a nine (9) count complaint against these the Sox defendants, as well as SDI Security, Inc., Superior Ambulance and other "unknown" defendants. Plaintiff, Robert Demar, alleges that on September 7, 2003, he was a patron at U.S. Cellular Field, where he was watching a Chicago White Sox baseball game.  Plaintiff claims that he wanted to wait in his seat for after the end of a game before using the restrooms because his alleged disability (polio and post-polio paralysis) prevented him from standing for an extended period of time line with the post-game crowd that was exiting seating area.  After approximately ten minutes, plaintiff spoke with security staff.  Plaintiff alleges that the Sox defendants violated his rights under the American's with Disabilities Act ("ADA") when he was removed from the ballpark by security staff and presented to medical personnel for evaluation after he complained that he could not walk or stand.

## II. Summary of Arguments

As discussed below, plaintiff's ADA claim fails to comply with FRCP 8(a) because it neglects to place defendants on notice of what it is about the ballpark or defendants' conduct that allegedly violated the ADA. Alternatively, plaintiff should be required to provide a more definite statement pursuant to Rule 12(e) so that defendants may properly respond to these allegations.

In the alternative, to the extent that this Court believes that plaintiff has stated sufficient allegations to place defendant on notice of his claim(s), plaintiff has failed to state a claim upon which relief can be granted. As an initial matter, plaintiff has not alleged that the ballpark lacks an adequate number of bathrooms. Second, plaintiff has not alleged that the ballpark lacks ADA compliant bathrooms. Third, plaintiff has not alleged that the layout of the ballpark is not ADA compliant. Rather, plaintiff appears to argue that the staff should not have removed him from the ballpark after the game for a medical evaluation. Thus, plaintiff appears to suggest that *but for* the alleged tortuous conduct of park staff (who allegedly removed him from the ballpark against his will), he would have been able to accomplish his goal of going to the bathroom without waiting in line with the exiting crowd. Put another way, plaintiff has not alleged that his injuries were caused by the layout of the ballpark or the number of bathroom facilities. That being the case, plaintiff's complaint amounts to nothing more than state law tort claim for false imprisonment and/or battery, and there is no reason for this Court to then burden itself with a complex, yet unnecessary, ADA analysis.

As for plaintiff's state law claim, his claim negligent infliction of emotional distress claim, as well as his remaining state law claims, are preempted by the Illinois Human Rights Act. Alternatively, plaintiff's state law claim for false imprisonment should be dismissed because plaintiff has pled himself out of court and has otherwise

failed to state a cause of action. As an initial matter, while plaintiff admits that he informed ballpark staff that he could not walk and that he could not stand, he asserts that he was falsely imprisoned after the staff presented him to an ambulance for medical attention. Additionally, unlike most garden variety false imprisonment claims, which allege physical abuse, handcuffing, detention and booking, plaintiff's complaint contains no such allegations. Rather, plaintiff simply alleges *de minimus* contact incidental to securing review by medical staff, following his own claim that he could not leave his seat because he could not walk or stand. As discussed below, these allegations do not rise to the level of an imprisonment, and if they do, such actions were certainly reasonable given the statements plaintiff made to the defendants.

### III. Standard of Review

This Court has previously identified the standard of review for a 12(b)(6) motion to dismiss as follows:

> In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir.2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *See also Baker v. Kingsley,* 387 F.3d 649, 664 (7th Cir.2004)(stating that although the "plaintiffs' allegations provide[d] little detail ... [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir.1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992). Under the current notice pleading standard in federal courts a plaintiff need not

> "plead facts that, if true, establish each element of a "cause of action...." ' *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994)(stating that a "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter,* 286 F.3d 437, 439 (7th Cir.2002); *Kyle,* 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.,* and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins,* 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan,* 40 F.3d at 251.

*Hathaway v. New Dimension Center for Cosmetic Surgery,* 2005 WL 743085, *1 (N.D. Ill. 2005).

### IV.  Statement of Facts

Plaintiff, Robert Demar, alleges that on September 7, 2003, he was a patron at U.S. Cellular Field, where he was watching a Chicago White Sox baseball game. (Complaint, para. 10).  At that time, plaintiff alleges that he suffered from a disability, in that he suffered from polio and post-polio paralysis, that substantially limited his ability to stand upright, and walk. *Id.* at para. 17.[1] At the game, plaintiff remained in his designated seat so that the lines at the restrooms located at the ballpark could dissipate. *Id.* at para. 19 – 21. Plaintiff alleges that the restroom facilities existing at the ball park, could not "quickly" accommodate his need to use the restroom at the end of the baseball game. *Id.* at 20.  Plaintiff claims that after ten (10) minutes of waiting, park security staff unlawfully removed him from his seat and took him to a waiting ambulance. *Id.* at 26, 27.  Despite the fact that plaintiff did not want medical

---

[1] For the purposes of this motion, the Sox defendants will assume, as they must, that plaintiff is truly disabled under the ADA.

4

attention, he was then transported to Mercy Hospital at the *direction* of security staff. *Id.* at 28.

Count I purports to be a Title III ADA claim against the Sox defendants, alleging that the defendants discriminated against, and failed to accommodate plaintiff's disability. Count II is also brought against the Sox defendants and purports to be an claim for "injunctive relief" based upon the same allegations. Count III purports to be a state law assault and batter claim, brought against all defendants. Count IV purports to be a state law false arrest claim, also brought against all defendants. Count V is a state law negligence claim against the Sox defendants, the At Your Service defendants and SDI Security. Count VI is a state law negligence claim directed against Superior Ambulance. Count VII is state law negligence claim directed at unknown defendants. Count VIII purports to be a state law negligent infliction of emotional distress claim against all defendants. Count IX purports to be a claim for "respondeat superior" brought against all defendants.

## V. <u>Argument</u>

### A.   **Plaintiff Has Failed to Properly Assert an ADA Claim**

While plaintiff has draft his complaint with references to the ADA, is important to highlight that plaintiff has not alleged that he was denied access to the public facility. At the same time, plaintiff has not alleged that the ballpark fails to provide adequate access to and from his assigned seat. More importantly, plaintiff has failed to allege that the ballpark fails to provide handicapped accessible bathrooms. In fact, plaintiff has not alleged that the ballpark fails to contain enough handicapped accessible bathrooms, nor does challenge the adequacy of these facilities *per se*. Indeed, plaintiff does not even challenge the adequacy of these restroom facilities or his ability to use same at any point <u>during</u> the baseball game. Rather, plaintiff

vaguely speculates[2] that the line for restrooms *at the end of the game* did not provide him with "quick" access.

Plaintiff also fails to make allegations supporting his broad claim of intentional discrimination under the ADA. In fact, plaintiff's allegations make clear that the post-game lines impact *all patrons* who chose to wait to go to the bathroom at the conclusion of a ballgame and not simply individuals with qualified disabilities. That being the case, plaintiff has not set forth any facts or allegations that he has been treated any differently than a non-disabled and/or intentionally singled out for differential treatment based upon his disability. *See, e.g., Assn. for Disabled Americans v. City of Orlando*, 153 F.Supp.2d 1310, 1320-21 (M.D. Fla. 2001) (dismissing claims of handicapped who presented no evidence that they were excluded in any way by the allegedly non-compliant aspects of the sports arena and theatre facility, where the complained of aspects presented difficulties and inconveniences of varying degrees).

In summary, plaintiff does not set forth sufficient allegations, under any pleading standard, evidencing what it is about defendants' structure, bathrooms, physical layout that represent a violation of the ADA, or what it is about the accommodations that were afforded that were unreasonable. To the extent plaintiff's removal from the ballpark *may* state a claim under state law, it does not state a claim under the ADA for the reasons set forth above.[3]

---

[2] We say "speculate" because plaintiff does not allege how long the lines were, how many people were in the lines, how quickly the lines were moving or the absence of any alternative opportunity to "sit" in the restroom concourse area. Indeed, plaintiff's belief is apparently based upon previous, yet undisclosed, trips to the ballpark, but he fails to allege whether the attendance and circumstances present on those nights were similar to September 7, 2003.

[3] As noted above, defendants' arguments are based upon the fact that plaintiff has raised no allegations which call into question the physical structure of the ballpark.

### B. In the Alternative, Plaintiff Should Be Required to Replead His Complaint in a More Definite Manner as Required by FRCP 8(a)

In the alternative, plaintiff's complaint should be stricken with leave to replead because he has failed to properly place defendants on notice of the claim he makes and the relief that he purports to seek. As demonstrated below, plaintiff's broad, generic allegations violate FRCP 8(a)(2). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." Despite the "relaxed" pleading standards that govern Rule 8(a)(2), "a plaintiff must still plead "sufficient facts ... to allow the district court to understand the gravamen of the plaintiff's complaint." *Phelan v. City of Chicago*, 347 F.3d 679, 682 (7th Cir. 2003) (quoting *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir.1998). In other words, a complaint must still "provide the defendant with at least minimal notice of the claim." *Kyle,* 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)). "For notice to be given, 'a complaint must at least include the operative facts upon which a plaintiff bases his claim'" *Id.* at 455 (quoting *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992) (internal citations omitted)). More recently, the Seventh Circuit has held that while plaintiff's are not obligated "to 'plead facts' demonstrating the defendants' deliberate indifference, his complaint must provide some grounds for concluding that he could possibly be 'entitled to relief.'" *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). *See also Collier v. Rodriques,* 1996 WL 535326, *3 (N.D.Ill. 1996)("plaintiffs are still required under notice pleading requirements to present a short plain statement which puts the City on notice of the claim and the ground upon which it rests.").

Under this backdrop, and in light of the deficient and vague allegations in plaintiff's complaint, it important to recap what the complaint *does not say*. *See* Section V-A. Although plaintiff broadly claims in paragraph 46 that defendants "failed to remove architectural barriers in existing facilities or offer services in alternative

settings when it is readily achievable to do so," he has failed to identify a single architectural barrier at the ballpark that impedes his ability to use the facility because of his alleged disability. At the same time, he has failed to identify a single example of the type of "services in alternative settings" that he claims he should be provided, and fails to identify any section within the ADA regulations which requires that allegedly disabled individuals need not wait in a restroom line effecting every other patron. And as noted above, plaintiff does not allege that any aspect of the *physical structure* of the ballpark impacts his ability to use the bathroom facilities during the game, let alone at the end of the game when exiting the stadium. Again, to the extent that plaintiff claims that staff removed him from the stadium, this does not amount to a claim under the ADA, and as best, it appears to only sound in tort.

As set forth above, a fair reading of plaintiff's complaint evidences that he makes no *per se* attack on the ballpark's structural facilities, or its ability to accommodate disabled patrons during the entire nine (9) innings of baseball. To the contrary, plaintiff apparently concedes the existence of adequate restroom facilities during the ballgame, and concedes that the facility would have accommodated his personal needs – *had it not been for the alleged tortuous actions of park staff.* Indeed, plaintiff's complaint contains *no* allegations attacking the adequacy of the ballpark's restroom facilities if his plan to remain in his seat had been allowed to run its course. This is a simple tort claim under Illinois state law and if that is the case, the unnecessary, burdensome ADA claim need not pre-occupy this Court any longer.

For these reasons, plaintiff should be required to replead his complaint to the extent that this Court declines to dismiss it on the basis that it simply attempts to state a claim under state law.

### C. Plaintiff's State Law Claims Are Preempted

In the alternative, plaintiff's claim for Negligent Infliction of Emotional Distress ("NIED") and his related state law claims are preempted by the Illinois Human Rights Act, 775 ILCS 5/1-101, et seq.[4]  According to the Seventh Circuit, "[t]he IHRA preempts all state law claims seeking redress for a 'civil rights violation' within the meaning of [that] statute." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (internal citation omitted).  *Krocka* specifically upheld the dismissal of an Intentional Infliction of Emotional Distress ("IIED") claim that was brought within the context of an ADA based claim, holding that the allegedly discriminatory conduct was "inextricably linked to [the plaintiff's] disability discrimination claim." *Id.* at 517.  *See also Quantock v. Shared Marketing Services, Inc.*, 312 F.3d 899, 905 (7th Cir. 2002) (holding that the IHRA "preempts tort claims that are 'inextricably linked' to allegations of [disability discrimination]"); *Stansberry v. Uhlich Children's Home*, 264 F.Supp.2d 681, 690 (N.D. Ill. 2003) (dismissing ADA based IIED claim as preempted under the IHRA); *Ulatowski v. John Sterling Corp.*, 2004 WL 1385829, *5 (N.D. Ill. 2004) (dismissing IIED, fraud and conspiracy claims based on preemption under the IHRA); *Johnson v. Chicago Bd. of Education*, 2002 WL 1769976, *4 (N.D. Ill. 2002) (citing cases and holding that "the judge of this district have 'routinely dismissed Illinois state tort claims – particularly intentional infliction of emotional distress claims – for lack of jurisdiction when brought in connection with allegations of a civil rights violation.").

Here, plaintiff has alleged state law torts which relate to a what should be a state law claim under the IHRA.  This Court has applied *Krocka* to dismiss an IIED claim brought in the context of an ADA claim on the basis that there was "no

---

[4] Section 5/8-111(C) of the IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this act."  Section 5/1-102(A) of the IHRA specifically prohibits discrimination against a person "because of his or her . . . physical or metal handicap . . . ."

independent basis to support Plaintiff's IIED claim other than the alleged discrimination because of Tessendor's disability." *Tessendorf v. Edward Hines Lumber Co.*, 2005 WL 831296, *3 (N.D. Ill. 2005). In so finding, this Court concluded that "Plaintiff's IIED claim is inextricably connected to the protections provided by the IHRA and the claim is therefore preempted by the IHRA." *Id.*

As noted above, numerous courts within this district have dismissed IIED claims under the preemption clause of the IHRA. For example, Judge Darrah dismissed a constructive discharge claim that he found was "inextricably linked" to a claim for sex discrimination. *Wilkes v. Harrah's Casino Joliet*, 2003 WL 21196268, *3 (N.D. Ill. 2003) ("If there were no claim of sex discrimination, plaintiff would not have a claim for constructive discharge against Defendant. Thus, the constructive discharge claim is inextricably linked to her claim of discrimination under Title VII . . . and dismissal is appropriate."). Similarly, Judge Anderson dismissed a claims for emotional in the context of an age discrimination claim on the basis that "without the allegation of age discrimination, plaintiff would have no basis for claiming liability for negligent infliction of emotional distress." *Cady v. Miss Page, Ltd.*, 2003 WL 1809468, *3 (N.D. Ill. 2003).

Against this backdrop, plaintiff claims that he wanted to go to the bathroom but that he did not want to wait in line with the dispersing crowd to do so. He then claims that various employees refused to provide him with his requested accommodation – to remain in his seat until the crowd had dispersed rather than wait in line for a bathroom. *See* Complaint, ¶ 23. Because plaintiff's various tort claims for NIED (Count VIII), assault and battery (Count III), false imprisonment (Count IV) and negligence (Count V) are all "inextricably linked" to the alleged refusal afford him his the accommodation that he allegedly requested, plaintiff's claims are preempted by the IHRA. To recap, plaintiff has alleged that he was removed from the ballpark on

account of his alleged disability. Put another way, suffered discrimination because various defendants allegedly failed to provide him with his requested accommodation. To paragraph *Wilkes v. Harrah's Casino Joliet*, if plaintiff did not suffer from disability discrimination, plaintiff would not have a claim for NIED, assault and battery, false imprisonment or negligence.

*Wilkes*, 2003 WL 21196268, *3.

### D. In the Alternative, Plaintiff Has Failed to State a Claim for False Imprisonment

Plaintiff's claim for false imprisonment against the Sox defendants must be dismissed. First, as a matter of law, presenting plaintiff to an ambulance at the end of the game to receive medical attention, after he had informed staff that he could stand or walk, does not state a claim for false imprisonment.[5] Second, and in the event that the complaint as alleged does plead that an "imprisonment" occurred, the law does not prohibit *all* such "seizures," only those that are *unreasonable.* The facts pled establish, as a matter of law, that the defendants' conduct was reasonable.

A claim for false imprisonment involves the unlawful restraint of a person's freedom of liberty of movement without reasonable grounds for doing so. *See Yang v. Hardin,* 37 F.3d 282, 286 (7th Cir. 1994) (police officer falsely imprisoned plaintiff when he restrained plaintiff's movement at gunpoint). However, it is well settled that not every contact between a defendant (security guard, usher or police officer) and a private citizen amounts to a false imprisonment. There are some contacts that are so *de minimus* or innocuous in nature that they do not amount to an unlawful imprisonment. For example, Seventh Circuit has further recognized that "unreasonable, unjustified, or outrageous conduct by a defendant officer is not prohibited by the Fourth Amendment if it does not involve a seizure (or in the

---

[5] Plaintiff has pled himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Holman v. State of Indiana,* 211 F.3d 399, 406 (7th Cir.2000), *cert. denied,* 121 S.Ct. 191(2000); *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir.1999).

appropriate case, a search)." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994). Likewise, the fact that a plaintiff felt harassed or intimidated does not implicate the Fourth Amendment. For example, in *Arnold v. Truemper*, 833 F.Supp. 678, 682-84 (N.D.Ill. 1993), one court held that "intimidation" by police officers was not actionable under §1983. *See also Lanigan v. Village of East Hazelcrest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997) ("of course, every official abuse of power, even if unreasonable, unjustified or outrageous does not rise to the level of a federal constitutional deprivation . . . some such conduct may simply violate state tort law or, indeed, may be perfectly legal, although unseemly or reprehensible . . . ."). Rather, in the context of the Fourth Amendment, a seizure does not occur until an individual's freedom of movement has been terminated by an intentional application of physical force or a suspect's submission to asserted authority. *See, e.g., California v. Hodari D.*, 499 U.S. 621, 626 (1991).

Against this legal backdrop and the facts that have been pled here, plaintiff cannot establish that his liberty was unlawfully restrained. While most traditional false imprisonment claims relate to allegations that a defendant unlawfully forced a plaintiff to remain at a location, the defendants in this case did no such thing. There are no facts to suggest that plaintiff was precluded from leaving the park at any time.

Rather, it was not until plaintiff decided that he wanted to stay at the ballpark (as opposed to using the restroom facilities prior the conclusion of the game and the mass exodus of fans) that certain defendants removed plaintiff from the ballpark and provided him with medical care after he complained that he could not walk or stand. At most, plaintiff has insufficiently pled that the defendants erred in determining that medical attention was prudent. *See, e.g., Trevino v. Flash Cab Co.*, 272 Ill.App.3d 1022, 1031, 651 N.E.2d 723, 729 (1st Dist. 1995) (false imprisonment was not established by allegations that plaintiff was ordered to leave defendants' cab some

distance from her intended destination). In summary, plaintiff has failed to properly claim that he was not "free to leave," especially considering the fact that his decision to stay at the stadium was dictated by his desire to use the restroom facilities at the busiest time period.

In the alternative, even if the situation could be legally viewed as a restraint of liberty, only "unreasonable" imprisonments are actionable. *See White v. City of Markham,* 310 F.3d 989, 995 (7th Cir. 2000) (in cases where a traditional analysis of "seizure" yields no answer, the court must evaluate the circumstances under traditional reasonableness standards by analyzing the privacy interests against the government's legitimate interests). Whether or not a seizure is reasonable is typically determined by examining the totality of the circumstances. *Id.* citing *Illinois v. McArthur,* 531 U.S. 326, 331-34, 121 S.Ct. 946 (2001). In *Wright,* the plaintiff alleged that he was seized, but this claim was rejected by the Court when it rejected plaintiff's claim that he possessed a right to remain on his aunt's property in the face of her demand that he leave.

Under this backdrop, this "imprisonment" cannot be said to have been unreasonable. By plaintiff's own admission, he expressed that he could not walk and could not stand, and following these claims, plaintiff was presented for medical attention. All other patrons had left the ballpark stands, yet he remained in his seat. Plaintiff does not allege that the defendants made any "threat of force or arrest" and the caselaw teaches that even in such cases, a claim will not lie. *See, e.g., Schlessinger v. Salimes*, 100 F.3d 519, 523 (7th Cir. 1986). Indeed, one could reasonably interpret that if what plaintiff told park staff was true, presenting him for medical attention was the only prudent course of action. If, on the other hand, plaintiff did not appear to be telling the truth and was simply loitering, then he could be understood to be a trespasser, and the defendants conduct must also be viewed as

13

reasonable. In either event, defendants' goal was for the plaintiff to leave the park, and therefore as a matter of law, no unlawful imprisonment occurred.

WHEREFORE, for the foregoing reasons, defendants, Chicago White Sox, Ltd., ChiSox Corporation, At Your Service, Inc. and At Your Service LLC, respectfully request an order from this Court dismissing plaintiff's complaint pursuant to FRCP 12(b)(6), or in the alternative and order, pursuant to Rule 12(e), requiring plaintiff to plead his claims in a more definite manner as required by Rule 8(a) so that the defendants may properly respond to such claims, and for any other relief that this Court deems just and proper.

        Respectfully submitted,

        By: /s/ James C. Vlahakis

        One of the Attorney for defendants, Chicago White Sox, Ltd., ChiSox Corporation (hereinafter the "Sox defendants"), At Your Service, Inc. and At Your Service LLC

James C. Vlahakis
HINSHAW & CULBERTSON, LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

ARDC No. 6230459
Jvlahakis@hinshawlaw.com

5993579v1 858400

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2006, I electronically filed defendants, Chicago White Sox, Ltd., ChiSox Corporation (hereinafter the "Sox defendants"), At Your Service, Inc. and At Your Service LLC's **Motion to Dismiss**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.


By: /s/ James Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON, LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

ARDC No. 6230459
Jvlahakis@hinshawlaw.com

5993579v1 858400