UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT DEMAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 C 5093 |
| ) | |
| THE CHICAGO WHITE SOX, LTD., et al. ) | Judge Der-Yeghiayan |
| ) | |
| Defendants. ) | |

### REPLY IN SUPPORT OF MOTION TO DISMISS

NOW COME the Defendants, Chicago White Sox, Ltd., ChiSox Corporation (hereinafter the "Sox defendants"), At Your Service, Inc., and At Your Service LLC, by and through their attorneys, Robert T. Shannon and James C. Vlahakis, and for their Reply in Support of their Motion to Dismiss Plaintiff's Complaint, state as follows:

### I. INTRODUCTION

Plaintiff's response has clarified the issues of this case. Commendably, Plaintiff admits that he has not alleged that the ballpark, as a physical structure, fails to provide handicapped accessible bathrooms or that the ballpark fails to contain a sufficient number of handicapped accessible bathrooms. He also admits that he does he allege that the ballpark structure fails to provide adequate access to the available restrooms from his assigned seat.

Instead, Plaintiff claims that he has suffered an ADA violation because he was not provided with a "policy" accommodation, in the form of being allowed to remain in his seat after the conclusion of the game to wait to use the restrooms in order to avoid the standing in line with exiting patrons. It is apparent from the face of the Complaint that Plaintiff requested this "accommodation" *without* prior notice to security staff. Defendants have argued that it was reasonable for security staff to believe that

5992887v2 858400

Plaintiff needed medical assistance when he claimed that he could not stand without difficulty.

This Court can take judicial notice of the fact that the end of the game exodus at *any public event* is the most congested time for *any* patron to use the bathroom. Thus, in making this claim, Plaintiff neglects the obvious – that the ADA does not guarantee an accommodation wherever, whenever and however a plaintiff desires, in situations where a plaintiff neglects to avoid the complained of non-discriminatory condition (in this case, the post-game lines that impact *everyone* who chooses to use a restroom at the end of a game). Again, this case is not about a discriminatory structure or about inadequate access to bathroom facilities. In this context, the ADA only provides for <u>reasonable</u> accommodations. As demonstrated below, Defendants have not committed an ADA violation by declining to allow Plaintiff to linger in the ballpark – a policy that is admittedly applied to all patrons of the of the ballpark. This is especially true considering the fact that Plaintiff did not provide prior notice to security staff regarding his desire to be accommodated by lingering in his seat to use the restroom facilities after the game had concluded.

Put another way, the ADA does not require that Plaintiff be treated more favorably than non-handicapped patrons and other handicapped individuals who are otherwise required to leave the ballpark at the end of a ballgame, especially considering the fact that nothing precluded Plaintiff from using the bathroom prior to the post game exodus, or from asking staff for wheel-chair assistance to the restrooms. To argue otherwise would invite countless requests for "accommodation" to linger by other fans who may simply prefer to "ride-out" the exodus of departing patrons by suggesting that they are somehow disabled. This would lead to an administrative burden on Defendants' staff by requiring case-by-case assessments of

"ride-out" accommodation requests by staff trained to scrutinize fake and genuine requests. Clearly, such a determination would not be met by simply noting that a patron carries a cane.

To recap, the complained of situation facing the Plaintiff and all other fans is simply a product of waiting until the end of the game to do one's business. Thus, Plaintiff's demand that he must be allowed to use the facilities anytime he wants to *after* the conclusion of a ballgame, and that he must be able to wait for them as long as he wants to, anywhere he wants to, is simply not reasonable under the ADA.

## II. ARGUMENT

### A.    Plaintiff Has Not Stated an ADA Violation

By Plaintiff's own admissions, the requested accommodation is a product of his desire to use the facilities at the most congested time of a ballgame – the post game exodus – and his refusal to wait for the restroom anywhere besides his ticketed seat. Given this concession, Plaintiff has failed to state a violation of the ADA.

First, as a general matter, "the ADA does not require every element of a place of public accommodation to be accessible." *Long v. Coast Resorts, Inc.*, 32 F.Supp.2d 1203, 1212 (D.Nev. 1998), *aff'd in part, rev'd in part*, 267 F.3d 918 (9th Cir. 2001). According to *Long*:

> For example, every seat location in a stadium is not required to be wheelchair-accessible. Every room in a hotel is not required to be fully accessible. Every stall in every bathroom is not required to accommodate wheelchairs. Every entrance or exist is not required to be wheelchair-accessible.

*Id.* At the same time, the ADA does not afford a handicapped individual a *greater opportunity* to purchase handicapped seats than non-handicapped individuals. *See, e.g., Access Now, Inc., v. South Florida Stadium Corp.*, 161 F.Suup.2d 1357, 1367 (S.D. Fla. 2001).

Finally, there is no requirement under the ADA which mandates that patrons and/or workers are entitled to identical conditions as non-handicapped individuals. The Seventh Circuit, albeit decided in a work-related context, has held that the ADA does not require "an absolute identity in working conditions between disabled and nondisabled workers." *Vande Zande v. State of Wisconsin Dept. of Administration*, 44 F.3d 538, 546 (7th Cir. 1995) ("we do not think an employer has a duty to expend even modest amounts of money to bring about an absolute identity in working conditions between disabled and nondisabled workers."). In so holding, *Vande Zande* rejected the notion that an employer was expected to expend even a modest amount of money to provide a disabled individual with an accessible kitchenette sink where the employee had access to a handicapped equipped bathroom sink. *Id.* According to the court:

> Apparently it would have cost only about $150 to lower the sink on Vande Zande's floor; to lower it on all the floors might have cost as much as $2,000, though possibly less. Given the proximity of the bathroom sink, Vande Zande can hardly complain that the inaccessibility of the kitchenette sink interfered with her ability to work or with her physical comfort. Her argument rather is that forcing her to use the bathroom sink for activities (such as washing out her coffee cup) for which the other employees could use the kitchenette sink stigmatized her as different and inferior; she seeks an award of compensatory damages for the resulting emotional distress. We may assume without having to decide that emotional as well as physical barriers to the integration of disabled persons into the workforce are relevant in determining the reasonableness of an accommodation. But we do not think an employer has a duty to expend even modest amounts of money to bring about an absolute identity in working conditions between disabled and nondisabled workers. The creation of such a duty would be the inevitable consequence of deeming a failure to achieve identical conditions "stigmatizing." That is merely an epithet. We conclude that access to a particular sink, when access to an equivalent sink, conveniently located, is provided, is not a legal duty of an employer. The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort.

*Id.*

Against this backdrop, the ADA does not require Defendants to accommodate Plaintiff on-the-fly by leaving his seating section open (and therefore accessible to him) past its closure time. Similarly, the ADA does not require Defendants to accommodate Plaintiff by keeping the bathrooms open past the conclusion of the game where Plaintiff clearly declined to avail himself to the restroom prior to the mass exodus from the ballpark. In short, because has not suggested that he was denied the ability to access to the restrooms without suffering from his alleged disability *during the game*, he is not entitled to receive an accommodation simply because he <u>declined</u> to use the facilities during the accessible nine innings.

To the extent Plaintiff appears to suggest that he should be able to use the facilities at any time he wants and to wait in his seat to do so (presumably so that he does not miss any portion of the ballgame), this argument again misses the mark. While the ADA may require the construction of a limited number of handicapped accessible restrooms (which exist at the subject ballpark), the ADA does not mandate that ballparks remain open *after* the conclusion of a game to provide access to handicapped persons who (1) had ready access to the facilities during the entire game (2) chose to wait until the busiest time to use the facilities and [3] demanded to wait in their ticketed seat until they deemed the line of have lessened. Given these facts, it is not unreasonable to suggest that Plaintiff should use the restroom *before* the rush to exit the stadium (like, incidentally, many other fans who plan ahead), and it is certainly neither stigmatizing nor discriminatory.

In summary, the ADA does not mandate "absolute identity in . . . conditions between disabled and nondisabled" baseball fans. *Vande Zande*, 44 F.3d at 546. Rather, the mandate of the ADA is met in this case because Defendants have done

5992887v2 858400

"what is necessary to enable" Plaintiff to attend a game "in reasonable comfort." While this may not be to Plaintiff's liking to miss a pitch or play during the game to use the restroom prior to the post game exodus, the above authorities hold that ADA does not require Defendants to alleviate every aspect of an individual's disability. *See also, Association for Disabled Americans v. City of Orlando*, 153 F.Supp.2d 1310, 1320-21 (M.D. Fla. 2001) (dismissing claims of handicapped who presented no evidence that they were excluded in any way by the allegedly non-compliant aspects of the sports arena and theatre facility, where the complained of aspects presented difficulties and *inconveniences* of varying degrees).

In conclusion, Plaintiff has correctly declined to argue that the ADA requires officials to renovate a ballpark to create line-free access to restrooms for handicapped patrons who wait until the end of the game to use the facilities.[1] While this is a proper concession, at the same time, the ADA does not require ballpark officials to offer an accommodation, even one that does not alter the physical structure of a ballpark, where the need for an "accommodation" is not reasonable, given that it is necessitated by the decision to use the facilities at the most congested time on game day. Further, the requested accommodation, on its face, in unmanageable because it will require ballpark employees to be trained to make on the spot determinations as to whether a patron is truly suffering from a disability that requires staff to "accommodate" him by allowing him to remain in his seat to use a restroom after the general population has left the stadium.

---

[1] Plaintiff's concession satisfies Defendants' request that he submit a more definite statement. Accordingly, the only remaining issue is whether his "policy" accommodation states a cause of action under the ADA. Defendants submit that it does not.

6

### B. Plaintiff's State Law Claims

To the extent that this Court grants Defendants' Motion to Dismiss, it should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. §§ 1367(c)(3). According to the Seventh Circuit, the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1251 (7th Cir.1994). Put another way, upon dismissal of all federal claims, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman v. Hains,* 865 F.2d 920, 923 (7th Cir.1989).

To the extent this Court finds that Plaintiff has stated a claim under the ADA, this Court should dismiss Plaintiff's remaining state law claims for assault and battery (Count III), false imprisonment (Count IV), negligence (Count V) and emotional distress (Count VIII) for the reasons that follow.

#### 1. Plaintiff's State Law Claims Are Preempted

Plaintiff's response to Defendants' argument that his state law claims are preempted by the Illinois Human Rights Act misses the mark. As Defendants have already argued (and will not re-hash here in any detail), Plaintiff's ADA claim stems from the alleged failure to accommodate his desire to linger at the ballpark after the end of the game. While Plaintiff greatly quibbles with the phrasing of this claim, the bottom line is that his claims of assault and battery (Count III), false imprisonment (Count IV), negligence and emotional distress (Count VIII) are <u>all</u> linked, <u>inextricably</u>, from the alleged failure to accommodate him. In other words, theses claims are linked

5992887v2 858400

to his *removal* from the ballpark, and but for his removal, these claims would not exist.[2]

### 2. Plaintiff Has Failed to State a Claim For False Imprisonment

Defendants stand by their arguments that Plaintiff's allegations to not support the type of conduct required to state a claim for false imprisonment. To recap, Plaintiff has alleged that he informed various security staff that he had "difficulty" with mobility and could not walk or stand "for long periods of time." *See* Plaintiff's Response to Defendant's' Motion to Dismiss, p. 2 (citing paragraphs 17, 20 and 23 of his Complaint). Construing these allegations in Plaintiff's favor as this Court must do in the context of a motion to dismiss, these allegations do not establish that Plaintiff was falsely imprisoned. Rather, these allegations support the actions of the security staff who, upon hearing that Plaintiff was suffering from an apparent medical condition, contacted trained medical staff to take care of Plaintiff's well-being. To the extent security staff may have misinterpreted Plaintiff's situation, this does not amount to false imprisonment, especially when he was not handcuffed or placed in a cell, but rather was presented to a physician for what can only be interpreted to be well-intentioned medical attention. Had Defendants harbored any ill-will, it is clear that they would have tossed Plaintiff to the curb or had him arrested and left in a cell. No such conduct took place.

---

[2] This conclusion is supported by both the federal district court cases cited in Defendants' Motion to Dismiss as well as the various state law cases cited in Plaintiff's response in opposition. Simply stated, Plaintiff's reliance on state law cases does not change the underlying determination that his state law claims are inextricably tied to his accommodation/discrimination claim.

WHEREFORE, the Defendants Chicago White Sox, Ltd., ChiSox Corporation, At Your Service, Inc. and At Your Service LLC, respectfully request this Court dismiss the Plaintiff's Complaint and for any additional relief that this Court deems just and proper.

> Respectfully submitted,
>
> By: /s/ James C. Vlahakis
> One of the Attorneys for Defendants
> Chicago White Sox, Ltd., ChiSox
> Corporation (hereinafter the "Sox
> defendants"), At Your Service, Inc. and
> At Your Service LLC

James C. Vlahakis
Robert T. Shannon
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

ARDC No. 6230459
Jvlahakis@hinshawlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on January 11, 2006, I electronically filed Defendants Chicago White Sox, Ltd., ChiSox Corporation (hereinafter the "Sox defendants"), At Your Service, Inc., and At Your Service LLC's **REPLY IN SUPPORT OF MOTION TO DISMISS**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

I hereby certify that on January 11, 2006, I served a hard copy of the aforementioned Reply to the following attorney of record:

    Matthew T. Martell, Esq.
    7557 W. 63rd Street
    Summit, Illinois 60501


Respectfully submitted,

By: /s/ James C. Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

ARDC No. 6230459
Jvlahakis@hinshawlaw.com

5992887v2 858400