

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ROBERT DEMAR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 05 C 5093 |
| ) | |
| **THE CHICAGO WHITE SOX, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Chicago White Sox, Ltd.'s, Defendant ChiSox Corporation's, and Defendant At Your Service LLC's (collectively referred to as "CWS") motion to dismiss and, in the alternative, motion for a more definite statement. For the reasons stated below, we grant in part and deny in part the motion to dismiss and grant the motion for a more definite statement.

## BACKGROUND

Plaintiff Robert Demar ("Demar") alleges that due to severe polio and post-polio induced paralysis in his abdomen, he is substantially limited in his ability to

1

"ambulate, stand upright and erect, and walk." (Compl. Par. 17). Demar claims that on September 7, 2003, he attended a Chicago White Sox game at U.S. Cellular Field in Chicago, Illinois. According to Demar, as the game ended, he saw people begin to exit the seating area in the stadium and form long lines. Demar claims that he thought that the restroom facilities and elevators at U.S. Cellular Field could not adequately accommodate the large lines that would be forming as people left their seats. Demar contends that he planned to use the restrooms and elevators at the ballpark once the crowd had disbursed.

Demar claims that while he waited for the crowd to disburse, security personnel from Defendant SDI Security, Inc. demanded that he leave the seating area and Demar explained that he was disabled and was waiting for the crowd to thin out. At that point, the security personnel allegedly proceeded to take possession of Demar's walking cane and forcibly removed him from the seating area. The security personnel then allegedly brought Demar to an ambulance on the ground level. Demar claims that the ambulance was operated by Defendant Superior Air-Ground Ambulance Service, Inc ("Superior") and that he was taken by ambulance to a hospital where he refused to be examined or treated. Demar further alleges that he "was forced to fend for himself" in order to return to U.S. Cellular Field and retrieve his vehicle. (Compl. Par. 35). Demar also claims that Superior subsequently sent him a bill for its services. In the complaint Demar includes an Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, claim (Count I), a

claim seeking injunctive relief (Count II), an assault and battery claim (Count III), a false imprisonment claim (Count IV), negligence claims (Counts V, VI, and VII), a negligent infliction of emotional distress claim (Count VIII), and a respondeat superior claim (Count IX). CWS has now filed a motion to dismiss and move, in the alternative, for a more definite statement.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th

Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action.'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins v. Silverstein*, 939 F.2d 463, 466-67 (7th Cir. 1991). The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. Illinois Human Rights Act Preemption

CWS argues that the state law claims in the instant action are preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* The IHRA

provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). The IHRA preempts Illinois tort claims that are "inextricably linked to a civil rights violation" under the IHRA. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). If a course of conduct "would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)(quoting *Maksimovic*, 687 N.E.2d at 22). see also *James F. Jackson v. Local 705, Intern. Broth. of Teamsters, AFL-CIO*, 2002 WL 460841, at *14 (N.D. Ill. 2002)(stating that in determining the preemption issue, "it does not matter that the conduct giving rise to the tort claim could also support an IHRA claim"). Finally, the Supreme Court of Illinois has stated that the pertinent inquiry for the preemption issue is whether "a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Maksimovic*, 687 N.E.2d at 24.

We first note that CWS points to *Tessendorf v. Edward Hines Lumber Co.*, 393 F.Supp. 2d 686 (N.D. Ill. 2005), in which this court previously had found that the plaintiff's intentional infliction of emotional distress claim was preempted by the IHRA. *Id.* at 689. CWS asks the court to follow the same approach in the instant action. However, in *Tessendorf* the plaintiff was suing his former employer and the

IHRA provision that was being compared to determine the preemption issue was 775 ILCS 5/2-102, which deals solely with discrimination by an employer. *Id.* at 691. In the instant action, unlike in *Tessendorf*, Demar is not suing his former employer and thus 775 ILCS 5/2-102 is not applicable in the instant action. For the same reason, CWS's citation to several other cases involving discrimination by an employer are not applicable in the instant action.

The closest duty in the IHRA to the state law claims in the instant action is listed in 775 ILCS 5/5-102, which provides that "[i]t is a civil rights violation for any person on the basis of unlawful discrimination to [d]eny or refuse to another the full and equal enjoyment of the facilities and services of any public place of accommodation. . . ." 775 ILCS 5/5-102. The assault and battery claim brought by Demar (Count III) deals with the alleged forcible removal of Demar from the stadium and thus the claim does not directly relate to the same issues associated with the accommodation provision of the IHRA. The claim of assault and battery can stand in its own right without any invocation of the accommodation duties under the IHRA and could be resolved independently. Whereas the ADA claim and the corresponding accommodation duties under the IHRA would relate to whether Demar should have been allowed to remain in the seating area, the assault and battery claim relates to whether the security officers, after deciding to remove Demar, made appropriate decisions in their efforts to remove Demar. The assault and battery claim relates, for example, to whether Demar should have been placed in

the ambulance, which is far removed from the issues concerning the accommodation duties of the IHRA. Therefore, we find that the assault and battery claim (Count III) is not preempted by the IHRA. Similarly, the false imprisonment claim (Count IV) also involves the removal of Demar and is separate from the duties under the IHRA. Thus, for the same reason, we conclude that the false imprisonment claim (Count IV) is not preempted. Also, for the same reasons, the negligence and negligent infliction of emotional distress claims (Counts V, VI, VII, and VIII) would not be preempted to the extent that they are based upon the physical removal of Demar from the seating area and the transport of him to the hospital. However, to the extent that the negligence and negligent infliction of emotional distress claims (Counts V, VI, VII, and VIII) are based upon the decision to remove Demar from the seating area instead of allowing him to wait there until the crowd thinned, the claims are preempted by the IHRA.

## III. False Imprisonment Claim (Count IV)

CWS argues that Demar has failed to plead a false imprisonment claim. Under the notice pleading standard, Demar is not required to allege facts that match up with each element of a cause of action. *Sanjuan*, 40 F.3d at 251. Regardless, Demar has alleged sufficient facts to address all of the elements of his false imprisonment claim. Under Illinois law, in order to prevail on a false imprisonment claim, a plaintiff must "establish that his or her personal liberty was unreasonably or

unlawfully restrained against his or her will and that the defendant caused or procured the restraint and actually or legally intended the restraint." *Russell v. Kinney Contractors, Inc.*, 795 N.E.2d 340, 347 (Ill. App. Ct. 2003). In the instant action, Demar contends that security personnel took from him his cane that he needed in order to walk. (Compl. Par. 25). Demar also claims that he was physically removed from the seating area, restrained by security personnel, and placed in an ambulance against his will and without legal justification. (Compl. Par. 25-28). Such allegations are sufficient to state a false imprisonment claim. We emphasize that we are not making any findings concerning the merits of the false imprisonment claim. As these proceedings progress, Demar will need to present evidence to support the false imprisonment claim, but for the purposes of the instant motion we are required to accept his allegations as true. *Thompson*, 300 F.3d at 753.

CWS argues that they were entirely justified in removing Demar from the seating area and placing him in the ambulance because Demar informed staff at the ballpark that he could not stand or walk. (Mot. 11). However, no such allegations are contained in the complaint, which is the limit of the scope of our inquiry for the purposes of the instant motion. Demar alleges that he told security personal that "he had a substantial difficulty standing upright" and Demar alleges that he had a cane to assist him in his walking. (Compl. Par. 23). Thus, Demar does not allege that he told security personnel that he could not stand or walk. CWS also argues that the

8

physical contact with Demar was *de minimis* and was entirely reasonable under the circumstances. That may well be true and perhaps CWS will be able to prevail on a motion for summary judgment under such a theory, but the court cannot resolve such issues when ruling on the instant motion to dismiss. Such a determination would be premature at this juncture. We are merely inquiring as to whether Demar has made sufficient allegations to state a false imprisonment claim and we conclude that he has done so in this instance.

### III. ADA Claim (Count I)

CWS argues that Demar has failed to plead a claim under the ADA. Demar claims that he is proceeding under Title III of the ADA. (Comp. Par. 1). CWS focuses in its motion to dismiss on the portion of Title III of the ADA that provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" by the operator of such a place. 42 U.S.C. § 12182(a). The Seventh Circuit has further clarified that "[t]he core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, *or other facility* (whether in physical space or in electronic space, . . .) *that is open to the public* cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." *Doe v.*

*Mutual of Omaha Ins. Co.*, 179 F.3d 557, 558-59 (7th Cir. 1999)(emphasis added).

CWS argues that Demar has failed to allege that he was prevented from using U.S. Cellular Field in a manner that non-disabled persons use the facility. CWS argues that Demar does not allege, for example, that the ballpark lacks handicapped accessible restrooms, that the number of restroom facilities were inadequate to accommodate the spectators, or that they were improperly laid out in the facility. CWS argues that, rather, Demar merely complains that he was not allowed to remain in the seating area after the game had concluded. However, Demar does allege in his complaint that he believes that there are normally long lines forming to get into the restrooms and elevator after games. (Compl. Par. 19-20). In addition, CWS's focus on the provisions of 42 U.S.C. § 12182(a) fails to take into consideration an additional provision in 42 U.S.C. § 12182(b)(2)(A)(ii) that expands the scope of subsection (a) by providing that:

> For purposes of subsection (a) of this section, *discrimination includes–* . . .
> (ii) *a failure to make reasonable modifications in policies, practices, or procedures*, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; . . . .

42 U.S.C. § 12182(b)(2)(A)(ii)(emphasis added). In the instant action, Demar clearly does contend that CWS should have altered its regular policy of requiring spectators to vacate seating areas after games and allow a disabled person, such as

10

Demar contends himself to be, to wait until the lines at the restrooms and elevators subsided before requiring the person to leave the seating area. Demar does allege that CWS failed to make what Demar contends is a reasonable modification to CWS's policies and procedures for the purpose of accommodating people with disabilities. Thus, Demar has alleged sufficient facts to state an ADA claim. We emphasize that at this juncture we are merely determining whether Demar has stated a valid claim and we are not making any ruling on the merits of Demar's claim. For the purposes of ruling on a motion to dismiss, we are obligated to accept as true all of the facts alleged by Demar. *Thompson*, 300 F.3d at 753. We have also not ruled that Demar is, as he contends, disabled within the meaning of the ADA.

CWS also requests in the alternative that Demar be required to re-plead the ADA claim and provide a more definite statement. Pursuant to Federal Rule of Civil Procedure 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). CWS correctly points out that Demar alleges vaguely in the complaint that CWS "failed to remove architectural barriers in existing facilities" to accommodate his disability. (Compl. Par. 46). It is not clear which portions of the facilities at U.S. Cellular Field Demar is complaining about in his ADA claim, and CWS is entitled to a better explanation of the claim brought against them. Therefore, we grant CWS's motion for a more definite statement and

11

order Demar to file an amended complaint re-pleading the ADA claim more clearly.

## CONCLUSION

Based on the foregoing analysis, we grant CWS's motion to dismiss the negligence and negligent infliction of emotional distress claims (Counts V, VI, VII, and VIII) to the extent that the claims are based upon the decision to remove Demar from the seating area. We deny the remainder of CWS's motion to dismiss. We also grant CWS's motion for a more definite statement and order Demar to file an amended complaint re-pleading his ADA claim more clearly so that the complaint provides CWS with sufficient notice of the ADA claim brought against it. Demar is given until February 1, 2005, to file an amended complaint. If Demar fails to file a proper amended complaint in accordance with this court's ruling in a timely fashion, this action will be dismissed. Defendants should answer or otherwise plead by February 21, 2005. The status date for January 31, 2006, is stricken and reset to March 21, 2006, at 9:00 a.m.

*Samuel Der-Yeghiayan*

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 18, 2006